# IN THE COURT OF APPEALS OF IOWA

No. 15-1583
Filed December 21, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JERRY WAYNE CUNNINGHAM JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Boone County, James B. Malloy,

District Associate Judge.

Jerry Cunningham Jr. appeals his judgment and sentence for possession

of methamphetamine, second offense. **AFFIRMED.**

Andrew J. Boettger of Hastings, Gartin & Boettger, LLP, Ames, for

appellant.

Thomas J. Miller, Attorney General, and Jean C. Pettinger and Tyler J.

Buller, Assistant Attorneys General, for appellee.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VAITHESWARAN, Judge.**

The district court found Jerry Cunningham Jr. guilty of possession of methamphetamine, second offense. On appeal, Cunningham challenges (1) the court's denial of his motion to dismiss the prosecution based on a speedy trial violation and (2) the court's denial of his motion to suppress evidence arguably gained pursuant to a statutory nurse-patient privilege.

## I.     *Dismissal Motion*

The ninety-day speedy trial rule states:

> If a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

Iowa R. Crim. P. 2.33(2)(b). "In determining whether there is good cause for a delay, [reviewing courts] focus only on one factor, the reason for the delay." *State v. Campbell*, 714 N.W.2d 622, 627 (Iowa 2006). Our review is for an abuse of discretion. *Id.*

We begin with the pertinent dates for application of the ninety-day speedy trial rule. The State filed its trial information on June 11, 2015. Cunningham failed to appear for his arraignment on June 23, and the district court granted a continuance to June 30. Cunningham again failed to appear on June 30, and the district court issued a bench warrant for his arrest. The warrant was served on July 27. Cunningham was arraigned on August 4 and demanded his right to a speedy trial. The district court entered an order setting pretrial conference for September 8 and a jury trial for September 22. Cunningham filed a motion to suppress on August 25, which was scheduled for hearing on September 11. The

district court denied the motion on September 16. A bench trial took place on September 21.

Cunningham did not waive his right to be tried within ninety days; the ninetieth day to be tried fell on September 9, 2015.

After the speedy trial deadline expired, Cunningham moved to dismiss the trial information. The district court denied the motion. The court cited Cunningham's failure "to appear for his original arraignment" and his failure to appear for the rescheduled arraignment and found the delays "attributable to" Cunningham's disappearance.

Cunningham does not deny his unavailability. He simply argues, "Absent evidence in the record that the State took affirmative steps to secure an earlier trial date that would comport with the speedy trial timeline, the State failed to meet its burden to establish good cause for the delay and the matter should have been dismissed." This argument is appealing at first blush because Cunningham ultimately appeared for arraignment in time to hold trial within the speedy trial deadline. But his lengthy absence rendered an earlier trial date impractical. *See* Iowa R. Crim. P. 2.11(4) ("Motions hereunder, except motions in limine, shall be filed when the grounds therefor reasonably appear but no later than 40 days after arraignment."); *Campbell*, 714 N.W.2d at 628 ("The decisive inquiry in these matters should be whether events that impeded the progress of the case and were attributable to the defendant or to some other good cause for delay served as a matter of practical necessity to move the trial date beyond the initial ninety-day period required by the rule.").

Confronted with a virtually identical fact pattern, the Iowa Supreme Court held just that. *See State v. Lyles*, 225 N.W.2d 124, 126 (Iowa 1975). In *Lyles*, "[t]he county attorney's office notified the pretrial release office on at least four occasions . . . that defendant was to appear for arraignment." 225 N.W.2d at 125. The defendant finally appeared one month after the trial information was filed and was arraigned approximately two weeks later. *Id.* at 126. Trial was scheduled sixty-eight days after the trial information was filed. *Id.* This was eight days following the then-existing[1] speedy trial deadline. *Id.* at 125-26. The defendant moved to dismiss the case. *Id.* at 125. The district court denied the motion. *Id.* The Iowa Supreme Court affirmed the ruling after finding that the delays in processing the case were "attributable to the defendant, not the State." *Id.* at 126. The court continued:

> Although the State, not the defendant, has the obligation to bring a defendant to trial, delay attributable to the defendant may constitute good cause preventing the State from carrying out its obligation. The State's duty to provide a defendant a speedy trial does not require that it play a game of hide-and-go-seek with him.

*Id.* The court further explained that "[a]rraginment is a prerequisite to trial, unless waived," the State "had a right to wait until arraignment to have a trial date set," and "[w]hen defendant was arraigned and entered a plea of not guilty his trial was promptly set." *Id.*

Like the defendant in *Lyles*, Cunningham disappeared before he could be arraigned. As in *Lyles*, the district court reasonably concluded the delay in

---

[1] The case was decided under Iowa Code section 795.2 (1973), which states in pertinent part: "If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial within sixty days after the indictment is found the court must order it to be dismissed, unless good cause to the contrary is shown."

scheduling trial was attributable to Cunningham's two-month absence, which constituted good cause for setting a trial date beyond the speedy trial deadline. Finding no abuse of discretion, we affirm the district court's denial of Cunningham's motion to dismiss.

## II.    Suppression Motion

The pertinent facts underlying Cunningham's suppression motion are as follows.   Boone police officers found Cunningham in an alley in a "very intoxicated" state.  They transported him to a hospital, where a nurse undressed him in preparation for a physician's examination.  The nurse found a substance in Cunningham's pocket that turned out to be methamphetamine.  "[D]ue to hospital policy on contraband and unknown substances," the nurse notified police.

Cunningham moved to suppress the evidence on the ground that it was made available to the State in violation of a statutory nurse/patient privilege.  *See* Iowa Code § 622.10 (2015).  The district court denied the motion, reasoning as follows:

> The testimony established that the drugs and paraphernalia obtained were a result of the nurse changing the defendant's urine and vomit soiled clothing to get him ready to be seen by the doctor. [The nurse] stated that it was not part of her duty to look for drugs on the defendant.  The information was not obtained to enable the physician to treat the patient skillfully.

Our review is on error.  *State v. Henneberry*, 558 N.W.2d 708, 709 (Iowa 1997).   The district court's fact findings bind us if supported by substantial evidence.  *See, e.g., State v. Bower*, 725 N.W.2d 435, 448 (Iowa 2006); *see also, e.g., State v. Staat*, 192 N.W.2d 192, 197 (Minn. 1971) ("Whether . . .

foundational facts have been established is a question of fact to be determined by the trial court.").

Iowa Code section 622.10 prohibits certain identified individuals "who obtain[] information by reason of" their employment from "disclos[ing] any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline" when testifying.[2] The Iowa Supreme Court has formulated a three-part test for application of this provision: "(1) the relationship . . . ; (2) the acquisition of the information or knowledge during this relationship; and (3) the necessity of the information to enable the physician to treat the patient skillfully." *Henneberry*, 558 N.W.2d at 709.

Cunningham focuses on the court's application of the third element. He contends that, contrary to the district court's determination, the nurse's discovery of the methamphetamine would have assisted the physician in treating him.

The State concedes the existence of an enumerated relationship. *See State v. Deases*, 518 N.W.2d 784, 787 (Iowa 1994) (noting State concession to the existence of a professional relationship and applying test to a nurse's

---

[2] Section 622.10(1) provides:

> A practicing attorney, counselor, physician, surgeon, physician assistant, advanced registered nurse practitioner, mental health professional, or the stenographer or confidential clerk of any such person, who obtains information by reason of the person's employment, or a member of the clergy shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

communication); *see also Staat*, 192 N.W.2d at 197 (holding "the physician-patient privilege extends by implication to nurses or attendants who are employees or acting under the direction of the physician examining or treating the patient"). The State zeros in on the term "communication" as used in section 622.10, arguing: (1) "communication" under section 622.10 does not cover the discovery of incidental items unrelated to treatment," (2) "the interaction between [the nurse] and [Cunningham] cannot be classified as a communication," and (3) "the communication [was not] necessary to the treatment."

"'Communication' . . . has been interpreted to mean 'all knowledge and information gained by the physician in the observation and personal examination of the patient in the discharge of his duties.'" *Henneberry*, 558 N.W.2d at 709. (citation omitted). Information contained in hospital records and blood samples have been found to be within the scope of "communication" as used in section 622.10. *See id.* Under this definition, we will assume without deciding that the nurse's discovery of the methamphetamine was a communication, and the interaction between the nurse and Cunningham was a communication. That leaves for our review whether the "communication" was necessary for treatment.

At the suppression hearing, the nurse testified members of the medical team "don't necessarily look for drugs"; the doctors do "[n]ot necessarily" need to know if drugs are found on a patient; and the physician determines how to treat an intoxicated patient "depending on their blood tests, urine tests." Her testimony supported the district court's determination that the communication was not necessary for treatment.

We recognize other portions of the nurse's testimony could have supported a contrary determination. However, it was the district court's prerogative as fact-finder to weigh the testimony as it saw fit. *See State v. Shanahan*, 712 N.W.2d 121, 131 (Iowa 2006) ("[B]ecause the district court had the opportunity to assess the credibility of the witnesses, we do give deference to those findings."); *Staat*, 192 N.W.2d at 199 ("[W]e find adequate evidentiary support in this record for the trial court's conclusion that the evidence failed to establish all essential facts to require the suppression of all testimony relating to the confiscated bottles of narcotic drugs. We are mindful that the trial court could have justifiably decided otherwise and barred admission of the drugs."). We conclude the district court did not err in overruling Cunningham's motion to suppress.

We affirm Cunningham's judgment and sentence for possession of methamphetamine, second offense.

**AFFIRMED.**